**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is only binding on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1037-14T4

STATE OF NEW JERSEY,

    Plaintiff—Respondent,

v.

MURAD H. BEYAH,

    Defendant—Appellant.

_____

        Submitted September 14, 2016 — Decided August 31, 2017

        Before Judges Carroll and Gooden Brown.

        On appeal from the Superior Court of New
        Jersey, Law Division, Essex County,
        Indictment No. 13-02-0478.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Frank M. Gennaro, Designated
        Counsel, on the brief).

        Carolyn A. Murray, Acting Essex County
        Prosecutor, attorney for respondent (Lucille
        M. Rosano, Special Deputy Attorney
        General/Acting Assistant Prosecutor, of
        counsel and on the brief).

        Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant, a convicted sex offender, was charged with violating Megan's Law by failing to register as a sex offender, a crime of the third-degree, N.J.S.A. 2C:7-2(c)(3). A jury found him guilty after a three-day trial in April 2014 and defendant was sentenced to four years of imprisonment, plus applicable fines and penalties. Defendant now appeals, asserting several trial errors. For the reasons that follow, we affirm.

I.

The record shows that, in 1986, defendant was convicted of rape and sodomy in New York, which triggered the Megan's Law registration requirements. Upon his release from prison after serving a twenty-five-year sentence for the sex offenses, defendant indicated he was moving to New Jersey. About two years after moving to Newark, he contacted the local police department about registering. However, upon meeting with a Newark detective, defendant refused to comply with the registration requirements and was subsequently indicted for failing to register.

At trial, the State presented three witnesses: Essex County Prosecutor's Office Detective Sabrina Howard, who produced a certified copy of defendant's March 13, 1986 New York convictions for first-degree sodomy and first-degree rape; Tracy Nelson, the Offender Rehabilitation Coordinator at Bare Hill Correctional Facility in New York where defendant was incarcerated, who was

responsible for coordinating defendant's completion of his sex offender registration paperwork upon his release from prison; and Newark Police Department Detective Miguel Aviles, with whom defendant met in 2012 in connection with registering in New Jersey as a sex offender. Defendant did not testify. Through defense counsel's examination of the witnesses and arguments to the jury, defendant maintained that he did not "knowingly" fail to register.

Nelson testified that she first met with defendant on July 21, 2010, before he was released from the Bare Hill Correctional Facility in Malone, New York, in order to complete his sex offender registration paperwork. Nelson testified she placed the six-page New York State Sex Offender Registration Form on the table between herself and defendant so that he could read along while she read the form to him line-by-line. The form notified defendant that, among other things, upon his release from custody, he was obligated to:

> [N]umber one, . . . complete a sex offender registration form to register with the Division of Criminal Justice Services, DCJS . . . [in] Albany, New York . . . fifteen days prior to your release from a state or local correctional facility or upon the imposition of a probation sentence to verify your intended home address. The completion of this form and its submission to DCJS satisfies your initial obligation to register and verify your intended home address.
>
> Number two, . . . notify DCJS in writing of any change of home address no later than

ten days after your move. Note, change of address forms are available at your local law enforcement agency, parole or probation office, or from DCJS. If you move to another state you must register as a sex offender within ten days of establishing residence.

. . . .

Number four, . . . verify your home address once a year for the duration of your registration through the return of a signed Address Verification Form to DCJS within ten days of its receipt.

The form also advised defendant that he "may be requested to provide fingerprints, a photograph or other pertinent information found necessary for compliance with this act."

After Nelson read the form to defendant on July 21, 2010, defendant refused to sign the form. Nelson read the form to defendant again on July 22 and 26, 2010. On July 22, 2010, defendant was released from prison. Although defendant again refused to sign the form, he was given a copy of the form with his release papers. However, on July 26, 2010, defendant initialed the form in four places and signed the form but wrote "[u]nder protest" next to his initials and signature. Defendant signed the form below a provision stating "I understand I have a duty to register and my duties were explained to me." On July 26, defendant also provided "South 19th Street, Newark, New Jersey" as his residence address upon his release.

On cross-examination, Nelson acknowledged that she did not attempt to ascertain whether defendant had a hearing problem because he gave no indication that he could not hear. Nelson also testified that because defendant refused to sign the form on July 22, 2010, rather than being released, he was arrested at the facility by the local police and transported to the county jail. When defendant was ultimately released from custody in New York on July 26, 2010, he left the facility with his family.

It is unclear when defendant took up residence in New Jersey. However, as of July 31, 2010, defendant registered for a New Jersey driver's license using the South 19th Street address in Newark as his residence. On September 11, 2012, defendant contacted Aviles via telephone to make an appointment to register as a sex offender in the State of New Jersey. Aviles was a sixteen-year veteran of the Newark Police Department and had been assigned to the Special Victims Unit with responsibility for completing Megan's Law registration forms since 2006. Aviles instructed defendant to come to his office on December 6, 2012, to complete his sex offender registration. Aviles explained that the delay in scheduling an appointment was not uncommon due to the understaffing of the Special Victims Unit and the high volume of sex offenders residing in Newark.

When defendant arrived for his appointment on December 6, 2012, he verified and signed the New Jersey Sex Offender Registration Form (Registration Form) containing his pedigree information. On the Registration Form, defendant's address was listed as South 19th Street, Basement, Newark, New Jersey, and defendant verified that he had been living at the South 19th Street address since 2010. In addition to the Registration Form, defendant was instructed to complete the State of New Jersey Acknowledgment of Duty to Register, Re-Register, and Verify Address Form (Acknowledgement Form).

The Acknowledgement Form informs registrants that, under Megan's Law, they are required to register and verify their addresses with their local or state police in the municipality where they reside and failure to do so is a violation of Megan's Law and is punishable by up to five years in state prison. The Acknowledgement Form also contains eight paragraphs, each of which states a duty or limitation imposed on the registrant. Beside each paragraph, the registrant is required to sign or initial the Acknowledgement Form.

In addition to giving defendant a chance to read the Acknowledgment Form himself, Aviles read the form in its entirety out loud to defendant and informed defendant that he was required to sign or initial after each paragraph. Aviles testified that

he had no indication from defendant that he could not hear what he was being told or that he could not write. Defendant initialed paragraphs one through six, and signed the form on the signature line at the bottom of the form, but refused to initial paragraphs seven and eight, prompting Aviles to write "[r]efused" next to those two paragraphs. Paragraph Seven of the Acknowledgement Form stated:

> I understand that I must register with the chief law enforcement officer of the municipality in which I intend to reside within 48 hours of my release from this institution. I understand that I may be charged with failure to register or re-register, a third-degree offense, as required by law.

Paragraph Eight of the Acknowledgement Form stated:

> I understand that if I remain offense-free for 15 years from the date of conviction or release from prison, whichever is later, I may apply to the Superior Court to be relieved of my obligation to register, unless I have more than one sex offense or if any of the offenses were [A]ggravated [S]exual [A]ssault or [S]exual [A]ssault.

In addition to notifying defendant that he was required to sign or initial after paragraphs seven and eight, Aviles informed defendant that he was required to submit to fingerprinting and photographing as part of the registration process. However, defendant refused despite Aviles pleading with him to submit to fingerprinting and photographing and warning him that his failure

7

to do so would result in his arrest. Defendant again refused to comply and was placed under arrest.

At the conclusion of the State's case, defendant moved for a judgment of acquittal pursuant to R. 3:18-1, which the court denied. Following the guilty verdict, defendant moved for a new trial pursuant to R. 3:20-1, which was also denied by the court. This appeal followed.

On appeal, defendant raises the following points for our consideration:

> POINT I - THE TRIAL COURT ADMITTED IMPROPER LAY OPINION TESTIMONY ON THE ULTIMATE FACTUAL ISSUE.
>
> POINT II - THE TRIAL COURT ERRED BY DENYING DEFENDANT'S JUDGMENT OF ACQUITTAL AND NEW TRIAL MOTIONS
>
> POINT III - DEFENDANT WAS PREJUDICED BY THE ADMISSION OF INADMISSIBLE "OTHER CRIMES" EVIDENCE.
>
> POINT IV - THE PROSECUTOR MADE IMPROPER COMMENTS IN HIS SUMMATION.

## II.

For the first time on appeal, defendant argues in Point One that the trial court admitted improper lay opinion testimony on the ultimate factual issue, namely, whether defendant failed to register as a sex offender. Specifically, defendant asserts that Detective Aviles, who was not offered as an expert witness, was permitted to offer his opinion that defendant "hasn't truly

8

registered[.]" According to defendant, Detective Aviles' opinion was improper "because it usurped the province of the jury," by expressing an "opinion as to [d]efendant's guilt" and "[s]uch testimony is inadmissible when offered by any lay or expert witness." Defendant argues further that "as the opinion of a person engaged in law enforcement," the "prejudicial effect" of Detective Aviles' "improper opinion was enhanced."

As defense counsel did not object, we review defendant's argument pursuant to the plain error standard. R. 2:10-2. Under that standard, a conviction will be reversed only if the error was "clearly capable of producing an unjust result[,]" that is, if it was "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached[.]" State v. Taffaro, 195 N.J. 442, 454 (2008) (citation omitted). Defendant must prove that the error was clear and obvious and that it affected his substantial rights. State v. Chew, 150 N.J. 30, 82 (1997), cert. denied, 528 U.S. 1052, 120 S. Ct. 593, 145 L. Ed. 2d 493 (1999), overruled in part on other grounds, State v. Boretsky, 186 N.J. 271, 284 (2006). A defendant's failure to object leads to the reasonable inference that the issue was not significant in the context of the trial. State v. Macon, 57 N.J. 325, 333 (1971).

N.J.R.E. 701 provides:

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue.

"Lay opinion testimony, therefore, when offered either in civil litigation or in criminal prosecutions, can only be admitted if it falls within the narrow bounds of testimony that is based on the perception of the witness and that will assist the jury in performing its function."  State v. McLean, 205 N.J. 438, 456 (2011).   In addition, N.J.R.E. 704 permits the admission of testimony in the form of an opinion, which "embraces an ultimate issue to be decided by the trier of fact."

During Detective Aviles' testimony, the following exchange occurred:

> Q: Did you . . . say anything to him when he wouldn't give the prints, take a photograph, sign it, or [sign or initial paragraphs] seven and eight?
>
> A: Yes. I explained to [defendant] that his refusal to sign could result in his arrest. And I pleaded with [defendant] to please sign and initial, because I didn't see a reason for him not to as this information was being given to him for informational purposes.  It wasn't an agreement between me and him.  It was simply something that was required to be done.
>
> Q: And he still did not oblige; is that correct?
>
> A: Yes.

Q: So he hasn't truly registered for this December 6, 2012 register form; is that correct?

A: Correct.

As an eight-year veteran of the Special Victims Unit, Detective Aviles' lay opinion testimony on the sex offender registration process and its requirements was appropriate. His testimony comports with N.J.R.E. 701 as it was based on his personal observations of defendant's actions during the registration process and would assist in understanding his testimony and determining a fact in issue. Further, Detective Aviles did not opine on whether defendant was guilty of the charged offense as the State was required to prove that defendant "knowingly" failed to register as a sex offender as one of the elements of the offense. N.J.S.A. 2C:7-2.

Even if Detective Aviles' testimony was error, it lacked the capacity to bring about an unjust result in light of the overwhelming evidence of defendant's guilt. Clearly, defendant's actions fell short of the requirements delineated in the Acknowledgement Form for sex offender registration. Further, the fact that defendant was admittedly living in Newark since July 2010, but did not attempt to register until September 2012, is itself sufficient evidence of a violation of the requirements of

Megan's Law, which mandates registration within ten days of moving into the state.

### III.

We turn next to Point Two in which defendant argues that the court erred in denying his judgment of acquittal and new trial motions. At the conclusion of the State's case, defendant moved for a judgment of acquittal pursuant to R. 3:18-1, arguing the State failed to prove an element of the crime, namely, the requisite "knowing" mental state. Defendant also moved for a new trial prior to his sentencing based on the State's "failure to prove a knowing violation[,]" and on what defense counsel characterized as the prosecutor's "obscene gesture during his summation." On that basis, defendant argues that his conviction constituted a miscarriage of justice, entitling him to a new trial.

A court shall enter an order for a judgment of acquittal only "if the evidence is insufficient to warrant a conviction." R. 3:18-1. The standard to be applied in determining a motion for a judgment of acquittal at the conclusion of the State's case is set forth in State v. Reyes, 50 N.J. 454, 458-59 (1967):

> [T]he question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a

> reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [<u>Ibid.</u>]

Under <u>Rule</u> 3:18-1, the trial judge "'is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State.'" <u>State v. Papasavvas</u>, 170 <u>N.J.</u> 462, 521 (2002) (quoting <u>State v. Kluber</u>, 130 <u>N.J. Super.</u> 336, 342 (App. Div. 1974), <u>certif. denied</u>, 67 <u>N.J.</u> 72 (1975)). "If the evidence satisfies that standard, the motion must be denied." <u>State v. Spivey</u>, 179 <u>N.J.</u> 229, 236 (2004). On appeal, we apply the same standard. <u>State v. Bunch</u>, 180 <u>N.J.</u> 534, 548-49 (2004); <u>State v. Josephs</u>, 174 <u>N.J.</u> 44, 81-82 (2002), <u>certif. denied</u>, 188 <u>N.J.</u> 579 (2006).

A motion for a new trial is governed by <u>Rule</u> 3:20-1, which directs that a trial judge may not set aside a jury verdict as against the weight of the evidence "unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." Defendant's argument is governed by <u>Rule</u> 2:10-1, which directs that a trial court's ruling on a motion for a new trial "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." We have stated that,

13

> [A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown. Our scope of review is limited to a determination of whether the findings made by the trial court could reasonably have been reached on sufficient credible evidence present in the record. Moreover, we will give deference to the trial judge's feel for the case since he presided over [it] . . . and had the opportunity to observe and hear the witnesses as they testified.
>
> [State v. Brooks, 366 N.J. Super. 447, 454 (App. Div. 2004) (alterations in original) (citation omitted).]

Defendant argues that the court erred in denying his judgment of acquittal motion because fingerprinting and photographing are not registration requirements specified in N.J.S.A. 2C:7-2(c), and paragraphs seven and eight of the Acknowledgement Form did not apply to him. Consequently, defendant asserts that his conduct did not constitute a "knowing" violation of the statute. In the alternative, defendant argues that his fingerprints and photograph were already on file by virtue of his past convictions and driver's license, respectively.

Defendant's argument is specious. Under Megan's Law, "[a] person [who is] required to register . . . shall do so on forms to be provided by the designated registering agency." N.J.S.A. 2C:7-2(c). N.J.S.A. 2C:7-4(b) further clarifies that "[t]he [registration] form . . . shall include . . . fingerprints and a

brief description of the crime or crimes for which registration is required[.]"  Additionally, the Attorney General may require information other than an offender's address as part of the verification process, and such information may include photographing.  N.J.S.A. 2C:7-2(e); see Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws 29 (Feb. 2007), http://www.nj.gov/oag/dcj/megan/meganguidelines-2-07.pdf.

Furthermore, our Supreme Court has held that registration under Megan's Law for those no longer in custody requires "appearance at a local police station for fingerprinting, photographing, and providing information for a registration form that will include a physical description, the offense involved, home address, employment or school address, vehicle used, and license plate number."  Doe v. Poritz, 142 N.J. 1, 21 (1995) (citing N.J.S.A. 2C:7-4(1)-(2)); see also In re Registrant J.G., 169 N.J. 304, 319 (2001).  Poritz specifically notes that the registration requirements also apply to sex offenders convicted elsewhere who relocate to the state.  Ibid.

Thus, contrary to defendant's assertion, fingerprinting and photographing are clearly required as part of the registration process.  Moreover, the obligation to provide fingerprints and photographs is not excused for registrants whose information is

15

already on file as undoubtedly would be the case for all previously convicted felons. Further, although paragraphs seven and eight of the Acknowledgement Form did not apply to defendant, under Megan's Law and the Attorney General's Guidelines, an offender's failure to complete the registration form as required by the registering agency may form the basis for a failure to register charge.

Here, a reasonable jury could infer that defendant acted knowingly as required under N.J.S.A. 2C:7-2.

> A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result.
>
> [N.J.S.A. 2C:2-2(b)(2).]

Knowledge may be reasonably inferred from the circumstances. See Spivey, supra, 179 N.J. at 237.

Aviles warned defendant that his failure to initial or sign the Acknowledgment Form in its entirety and submit to fingerprinting and photographing would lead to his arrest. Defendant had similar conversations with Nelson and had been arrested before for failing to comply with similar sex offender registration requirements in New York. Therefore, viewing the

16

evidence adduced at trial in the light most favorable to the State, a reasonable jury could infer that defendant's failure to register as a sex offender was knowing and thereby find proof of guilt beyond a reasonable doubt. Likewise, defendant's argument that he is entitled to a new trial based on the State's failure to prove a knowing violation of the statute must fail. Defendant's assertion that the prosecutor's "obscene gesture during his summation" amounted to a manifest denial of justice entitling him to a new trial will be addressed later in this opinion.

IV.

Defendant argues in Point Three that he was prejudiced by the admission of "other crimes" evidence. Specifically, defendant asserts that "the admission of the detailed testimony regarding [his] initial refusal to sign" the registration forms in New York, and "his later signing 'under protest,' constituted inadmissible "other crimes" evidence which denied him a fair trial." According to defendant, the admission of the evidence "was completely gratuitous, was of no probative value to the issues in dispute, and was designed simply to cause the jury to think of [d]efendant as a bad person in general." Because defendant failed to object at trial, we again view this contention through the prism of the plain error standard.

N.J.R.E. 404(b) provides in pertinent part:

17

> [E]vidence of other crimes, wrongs, or acts
> is not admissible to prove the disposition of
> a person in order to show that such person
> acted in conformity therewith. Such evidence
> may be admitted for other purposes, such as
> proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity or
> absence of mistake or accident when such
> matters are relevant to a material issue in
> dispute.

In general, other-crime evidence is not admissible to prove guilt by criminal predisposition. N.J.R.E. 404(b); see also State v. Weeks, 107 N.J. 396, 406 (1987) ("[I]t is not competent to prove one crime by proving another.") (citation omitted). The rationale for this is that a jury, aware of such evidence, may be tempted to convict, not by reason of proof, but by reason of perception. State v. Gibbons, 105 N.J. 67, 77 (1987).

"The threshold determination under Rule 404(b) is whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under Rule 404(b), or whether it is evidence intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly Rule 403." State v. Rose, 206 N.J. 141, 179 (2011). An uncharged offense is intrinsic evidence of a charged crime if: (1) "it 'directly proves' the charged offense[,]" or (2) the uncharged act was "performed contemporaneously with the charged crime" and it "facilitate[d] the commission of the charged crime." Id. at 180 (citation omitted). Under this analysis, "background" or "completes the

18

story" evidence is admissible as intrinsic evidence "under the inextricably intertwined test." Ibid.

We are satisfied that the evidence was admitted for a specific, non-propensity purpose, namely, to establish an element of the crime with which defendant was charged by showing that defendant's failure to register under Megan's Law was "knowing." Indeed, defendant himself acknowledges that "[t]he purpose of Ms. Nelson's testimony was to establish that, at the time of his release from prison in New York, [d]efendant [was] advised that if he moved to another state[,] he was required to register as a sex offender in that state." As such, we conclude the evidence was not impermissible other-crime evidence and its admission was not erroneous. Furthermore, under the plain error standard, an unchallenged error merits reversal only if it is "clearly capable of producing an unjust result." R. 2:10-2. Here, given the substantial proofs offered by the State during trial, the admission of the challenged evidence does not undermine our confidence in the outcome.

V.

Finally, in Point Four, defendant argues that the prosecutor committed prosecutorial misconduct during summation by (1) making "an obscene gesture" of "moving his hand under his chin" and attributing the gesture to defendant while referencing defendant's

19

refusal to sign the registration forms in New York; (2) implying that defendant's past non-compliance in New York in 2010 continued in 2012 and "improperly painted [d]efendant" as a person who was likely to disregard his obligation to register; and (3) "inferred that [d]efendant had an obligation to prove his innocence" by arguing that there had been no testimony regarding defendant's ability to write or defendant having mental health issues. Defendant objected to the hand gesture and requested a mistrial, which was denied, but did not object to the latter comments urged now on appeal, thereby subjecting them to plain error scrutiny.

For prosecutorial conduct "[t]o justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper," and "so egregious as to deprive defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 437-38 (2007) (citation omitted), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008). In reviewing the trial record for reversible error, an appellate court "must consider several factors, including whether 'timely and proper objections' were raised, whether the offending remarks 'were withdrawn promptly,' and whether the trial court struck the remarks and provided appropriate instructions to the jury[.]" State v. Smith, 212 N.J. 365, 403 (2012) (quoting State v. Frost, 158 N.J. 76, 83 (1999)), cert. denied, 568 U.S. 1217, 133 S. Ct. 1504, 185 L. Ed. 2d 558 (2013).

While prosecutors "are expected to make vigorous and forceful closing arguments to juries[,]" Frost, supra, 158 N.J. at 82 (citation omitted), "prosecutors should not make inaccurate legal or factual assertions during a trial" and "they must confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." State v. Mahoney, 188 N.J. 359, 376 (2006) (quoting State v. Smith, 167 N.J. 158, 178 (2001), cert. denied, 549 U.S. 995, 127 S. Ct. 507, 166 L. Ed. 2d 368 (2006). "Additionally, an appellate court will consider whether the offending remarks were prompted by comments in the summation of defense counsel." Smith, supra, 212 N.J. at 403-04 (citation omitted). "A prosecutor's otherwise prejudicial arguments may be deemed harmless if made in response to defense arguments." State v. McGuire, 419 N.J. Super. 88, 145 (App. Div.), certif. denied, 208 N.J. 335 (2011).

If, after reviewing the prosecutor's conduct, "it is apparent to the appellate court that the remarks were sufficiently egregious, a new trial is appropriate, even in the face of overwhelming evidence that a defendant may, in fact, be guilty." Smith, supra, 212 N.J. at 404. "In contrast, if the prosecutorial remarks were not 'so egregious that [they] deprived the defendant of a fair trial[,]' reversal is inappropriate." Ibid. (quoting Frost, supra, 158 N.J. at 83).

21

After defense counsel objected to the hand gesture, this sidebar colloquy ensued:

> [DEFENSE COUNSEL]:  I'd like to ask for a mistrial.  I don't know if the [c]ourt saw it, but the prosecutor made a gesture which means fuck you . . . Italian gesture under his chin when he said, "he didn't sign it."  I move for mistrial.  I have no idea why the prosecutor would do that, implied my client said, "fuck you," when that wasn't part of the evidence of the case.
>
> [PROSECUTOR]:  I'm not saying he said, "fuck you."  I'm saying he was noncompliant, in essence did not cooperate.
>
> [COURT]:  Does not necessarily mean that . . . we're not going to get into gestures.
>
> [PROSECUTOR]:  I don't believe it requires a mistrial.  What I'm showing is telling the jury he was not complying with this.
>
> [COURT]:  I didn't see the gesture, . . . .
>
> [PROSECUTOR]:  I didn't stick a middle finger up . . . .
>
> [COURT]:  For the record, I gather, the [d]efense describing what was apparently the gesture of taking one's fingers under the chin, flicking them forward, I gather.
>
> [PROSECUTOR]:  That's right.
>
> [THE COURT]:  I'm going to deny the application for a mistrial, ask the jury [to] ignore the prior gesture.

The court then instructed the jury to "disregard the motion, the gesture of the [p]rosecutor."

While the gesture may have been ill-advised, we conclude that it did not deprive defendant of a fair trial. An improper "fleeting and isolated" remark [or gesture] in summation is not grounds for reversal. State v. Watson, 224 N.J. Super. 354, 362 (App. Div.), certif. denied, 111 N.J. 620 (1988), cert. denied, 488 U.S. 983, 109 S. Ct. 535, 102 L. Ed. 2d 566 (1988). Moreover, the court's immediate instruction to the jury to disregard the gesture obviated the potential for prejudice. We therefore discern no basis to conclude that the judge's exercise of discretion in denying the mistrial motion and providing the curative instruction constituted "an abuse of discretion that result[ed] in a manifest injustice." State v. Smith, 224 N.J. 36, 47 (2016) (citation omitted).

We also reject defendant's contention that the prosecutor's comments referencing defendant's past refusal to sign the New York registration form and ultimately signing under protest was improper comment. On the contrary, the comments were confined to evidence revealed during the trial and reasonable inferences to be drawn from that evidence. We have already concluded that the admission of this evidence was proper. Moreover, the comments were responsive to defense counsel's extensive discussion during his summation of defendant's interaction with Nelson during the New York registration process.

Likewise, we reject defendant's assertion that the prosecutor impermissibly inferred that defendant must prove his innocence, thereby shifting the burden of proof to defendant, by stating in summation:

> And there's been no testimony, ladies and gentlemen, about whether the [d]efendant can write or anything like that. There's been no testimony about mental health issues. You are not to speculate about anything in this case. You are to take the evidence and apply it to the law.

A prosecutor may never suggest a shifting of the burden of proof to defendant. See State v. Loftin, 146 N.J. 295, 389 (1996). However, here, we do not interpret the prosecutor's remark as such but rather a response to the following comments by defense counsel in his summation:

> So I would ask that you look at paragraph two closely. And just for the average person, not a person that may have a disability or anything, would have trouble understanding. The average person would have trouble understanding that instruction.
>
> . . . .
>
> In New York Ms. Nelson went through the form with him. Prior to going through the form she didn't ascertain like how educated he was, whether he could read or write. Now I'll submit to you, yes, he can write. I'm not trying to say oh, well, he was, you know, he was completely oblivious to what's going on. I'm talking about the process.

In any event, any prejudice to defendant was undoubtedly cured by the court's instruction to the jury that "[t]he burden of proving each element of a charge beyond a reasonable doubt rests upon the State and that burden never shifts to the [d]efendant."

Additionally, defense counsel failed to object to both of these comments, suggesting that they were not overtly or unduly prejudicial. Generally, when defense counsel fails to object to purportedly improper remarks, "the remarks will not be deemed prejudicial" as "[t]he failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made. The failure to object also deprives the court of an opportunity to take curative action." State v. R.B., 183 N.J. 308, 333 (2005) (quoting Frost, supra, 158 N.J. at 82-84), certif. denied, 205 N.J. 520 (2011).

Moreover, a prosecutor's improper remarks made during summation can be cured so long as the trial court "clearly instruct[s] the jury that the remarks made . . . were not evidence, but argument." Smith, supra, 212 N.J. at 409. Here, in the context of the entire summation and defense counsel's intense attack on the registration process in New York, the prosecutor's brief remarks did not deprive defendant of his fundamental right to a fair trial. Moreover, defense counsel's failure to object suggests that the remarks were not prejudicial, and any prejudice

25

that arose was cured by the court's clear instructions to the jury that the attorneys' "[a]rguments, statements, remarks" made in summations were "not evidence and must not be treated as evidence."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION